UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

ANIBAL GUTAMA,                                    :

                                  Plaintiff,      :          REPORT AND
                                                             RECOMMENDATION
                                                  :
          -against-
                                                  :          1:23-CV-2802 (ENV)(PK)

WHITESTONE AIR INC., KONSTANTINA                  :
BISCARDI a/k/a KONSTANTINA
TEGERIDES, and MICHAEL TEGERIDES,                 :

                                                  :

                                 Defendants.      :

------------------------------------------------------------ x

**Peggy Kuo, United States Magistrate Judge:**

          Anibal Gutama ("Plaintiff") brought this action against Whitestone Air Inc. ("Whitestone"),

Konstantina Biscardi ("Biscardi"), and Michael Tegerides ("Tegerides") (collectively, "Defendants")

for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York

Labor Law ("NYLL"), N.Y. Lab. Law §§ 650 *et seq.* (*See* "Compl.," Dkt. 1.) Plaintiff has filed a Motion

for Default Judgment against Defendants. ("Motion," Dkt. 15.) The Honorable Eric Vitaliano

referred the Motion to me for a report and recommendation. For the reasons stated herein, I

respectfully recommend that the Motion be granted in part and denied in part, and damages awarded,

as set forth below.

## BACKGROUND

I.      **Factual Background**

          The following factual allegations are taken from the Complaint (Dkt. 1) and are accepted as

true for purposes of the Motion. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

          In addition, I rely on facts set forth in the Declaration of Plaintiff ("Pl. Decl.," Dkt. 15-1) and

the Declaration of Yale Pollack, Esq. ("Pollack Decl.," Dkt. 15-2.) "To determine liability, courts may

consider 'uncontroverted documentary evidence' submitted with the motion for default judgment as well as the factual allegations in the complaint." *Leo v. Province Therapeutics, LLC*, No. 23-CV-5418 (NJC)(JMW), 2024 WL 456824, at *3–7 (E.D.N.Y. Feb. 6. 2024) (quoting *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 189 (2d Cir. 2015)) (accepting information in the plaintiff's declaration in support of the motion for default judgment regarding the defendants' failure to pay the plaintiff and the total amount of unpaid wages as true).

Plaintiff was employed by Defendants as a mechanic from May 2018 through November 2022. (Compl. ¶¶ 18, 20; Pl. Decl. ¶¶ 5, 7.)  Whitestone is a domestic corporation in Whitestone, New York that installs and repairs heating, ventilation, and air conditioning ("HVAC") systems, along with providing other services.  (Compl. ¶¶ 7, 19; Pl. Decl. ¶¶ 4, 6.)  Whitestone earned at least $500,000 in annual revenue each year from 2018 through 2022. (Compl. ¶¶ 16, 18; Pl. Decl. ¶ 5.)

Biscardi and Tegerides (collectively, "Individual Defendants") exercised operational control over Whitestone as "owners, officers, and/or authorized agents."  (Compl. ¶¶ 8–9, 11.)  Throughout Plaintiff's employment, they controlled the hiring and firing of employees, the wages and working conditions of Plaintiff, and the manner by which Plaintiff was paid.  (Compl. ¶¶ 10–12).

Plaintiff alleges that he was paid an hourly rate of $22.50 for hours worked up to forty hours per week throughout his employment and was never provided with any wage notice or statements. (Compl. ¶¶ 22, 68, 72; Pl. Decl. ¶¶ 9–10, 18–19.)  Plaintiff worked five days per week from 8:00 a.m. until 4:30 p.m. each day.   (Compl. ¶¶ 21, 23; Pl. Decl. ¶¶ 8, 11.)   A thirty-minute meal break was automatically deducted from his hours each day, even though Plaintiff was rarely allowed to take an uninterrupted meal break.  (Compl. ¶¶ 24–25; Pl. Decl. ¶¶ 12–13.)  Additionally, Plaintiff alleges that he worked an estimated additional two hours per day, amounting to approximately ten hours of overtime per week, and was never paid overtime wages.  (Compl. ¶ 45; Pl. Decl. ¶ 17.)

## II.    <u>Relevant Procedural Background</u>

Plaintiff filed the Complaint on April 14, 2023 (Dkt. 1.)  Plaintiff effectuated service on Individual Defendants on April 22, 2023 (Dkts. 6, 7; Dkt. 15-6 at 3, 4 (ECF pagination)), and on Whitestone on April 26, 2023 (Dkt. 8; Dkt. 15-6 at 2 (ECF pagination).)  Defendants failed to appear. Plaintiff requested a Certificate of Default against Defendants (Dkt. 9), which the Clerk of Court entered on June 12, 2023.  (Dkt. 10.)

Plaintiff filed the Motion seeking a default judgment against Defendants for overtime violations under the FLSA and NYLL and failure to provide Plaintiff with a wage notice and wage statements as required under NYLL §195(1) and NYLL §195(3), respectively. [1]  (Pl. Decl. ¶¶ 17–19.)

## <u>DISCUSSION</u>

## I.    <u>Default Judgment Standard</u>

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for entry of a default judgment.  First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default.  Fed. R. Civ. P. 55(a).  The plaintiff may then move the court for an entry of default judgment.  Fed. R. Civ. P. 55(b)(2).  However, "just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right."  *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010).  The court "may first assure itself that it has personal jurisdiction over the defendant."  *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (internal quotations omitted).  The plaintiff must demonstrate proper service of the summons and complaint, *see Advanced Cap. Com. Grp., Inc. v. Suarez*, No. 09-CV-5558 (DRH)(GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013), and establish compliance with the

---

[1] Plaintiff also alleged minimum wage and spread of hours violations under the FLSA and the NYLL in the Complaint but did not seek judgment on these violations in the Motion.  (Compl. ¶¶ 37–39, 51–52, 64.)

procedural requirements of Local Civil Rules 7.1 and 55.2.[2]

In addition, the court must also determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel*, 577 F.3d at 84.  "[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).  In considering a motion for default judgment, a court accepts a plaintiff's "factual allegations as true and draw[s] all reasonable inferences in [the plaintiff's] favor." *Finkel*, 577 F.3d at 84.  However, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158.  "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-6476 (ARR)(PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *R&R adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020).

In the context of a motion for default judgment on FLSA and NYLL claims, "the plaintiff's recollection and estimates of hours worked are presumed to be correct." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012); *see also Santillan v. Henao*, 822 F. Supp. 2d 284, 294 (E.D.N.Y. 2011) ("[I]n the absence of rebuttal by defendants, or where the employer has defaulted, as here, the employee's recollection and estimates of hours worked are presumed to be correct . . . ." (quotations, citations, and alterations omitted)).

A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established . . . ." *Klideris v. Trattoria El Greco*, No. 10-CV-4288 (JBW)(CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *R&R adopted*, 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012).

---

[2] Since Plaintiff's Motion was filed before July 1, 2024, when the current version of the Local Civil Rules took effect, but after October 15, 2021, when the previous version of the Local Civil Rules took effect, all references herein to the Local Civil Rules are to the version of the rules effective as of October 15, 2021.

II.  **Jurisdiction and Default**

   A.   *Subject Matter Jurisdiction*

The Court has original subject matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

   B.   *Service on the Defendants*

Plaintiff served Whitehouse by delivering a copy of the Summons and Complaint to the New York Secretary of State. (Dkt. 8, Dkt. 15-6 at 2 (ECF pagination).)  This constitutes proper service. *See* N.Y. Bus. Corp. Law. § 306(b)(1); Fed R. Civ. P. 4(h)(1)(B).

Plaintiff also properly served Individual Defendants by leaving a copy of the Summons and Complaint at their place of business and sending a copy to their place of business via mail thereafter. (Dkts. 6, 7; Dkt. 15-6 at 3–4 (ECF pagination)); N.Y. C.P.L.R. § 308(2); Fed. R. Civ. P. 4(e).

   C.   *Personal Jurisdiction*

"[S]erving a summons . . . establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (quoting Fed. R. Civ. P. 4(k)(1)(A)).

New York has general jurisdiction over corporations formed under its laws and operating within the state.  *Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *R&R adopted*, 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018).  Because Whitehouse is a New York corporation and was properly served with the Summons and Complaint, the Court has personal jurisdiction over it.

New York has specific jurisdiction over individuals who "transact[ ] any business within the state" so long as "the cause of action arises from that transaction." *Francis*, 2018 WL 4292171 at *3 (quoting *Licci ex rel. Licci*, 673 F.3d at 60).  Individual Defendants owned and operated Whitestone and

supervised Plaintiff in New York. (Compl. ¶¶ 7–10.) The Court therefore has jurisdiction over Individual Defendants.

### III.    Procedural Compliance with Local Civil Rules 7.1 and 55.2

As part of the Motion and in Compliance with the Local Civil Rules, Plaintiff filed a Notice of Motion (Dkt. 15), *see* Local Civil Rule 7.1(a)(1); a memorandum of law in support of the Motion (Dkt. 16), *see* Local Civil Rule 7.1(a)(2); a copy of the Clerk's Certificate of Default against Defendant (Dkt. 15-7), *see* Local Civil Rule 55.2(b)(1); a copy of the Complaint (Dkt. 15-5), *see* Local Civil Rule 55.2(b)(2); proof of service of the Complaint (Dkts. 6, 7, 8; Dkt. 15-6 at 2–4 (ECF pagination)), *see* Local Civil Rule 55.1(b)(3); a proposed judgment (Dkt. 15-4), *see* Local Civil Rule 55.2(b)(3); and proof of mailing the Motion papers to Defendants at their last known addresses. (Dkts. 18, 19); *see* Local Civil Rule 55.2(c). Plaintiffs submitted an affirmation that Defendant is not an infant, in the military, or an incompetent person. (Dkts. 9, 20); *see* Local Civil Rule 55.1(b)(1). Thus, compliance with the Local Civil Rules is satisfied.

### IV.    Liability under the FLSA and NYLL

#### A.    Statute of Limitations

The FLSA statute of limitations is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued . . . ." 29 U.S.C. § 255(a). "When a defendant defaults, the violation is considered 'willful' and the three-year statute of limitations applies." *Rodriguez v. Queens Convenience Deli Corp.*, No. 09-CV-1089 (KAM)(SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011) (citing *Blue v. Finest Guard Servs., Inc.*, No. 09-CV-133 (ARR), 2010 WL 2927398 (E.D.N.Y. June 24, 2010)). "The statute of limitations starts to run when the employee begins to work for the employer." *Id.* (citation omitted).

Under the NYLL, the statute of limitations is six years. *See* NYLL §§ 198(3), 663(3).

Plaintiff commenced this action on April 4, 2023, alleging violations that occurred during his

employment from May 2018 through November 2022.  (Compl. ¶ 18; Pl. Decl. ¶ 5.)  Defendants have

defaulted, so the three-year FLSA statute of limitations applies.  Plaintiff may accordingly recover

under the FLSA for any claims that accrued on or after April 4, 2020.  Plaintiff may recover under the

six-year NYLL statute of limitations for any claims that accrued on or after April 4, 2017.

### B.    Employment Relationship Under the FLSA

The FLSA is to be "construed . . . liberally" because its "broad coverage is essential to

accomplish the goal of outlawing from interstate commerce goods produced under conditions that

fall below minimum standards of decency." *Tony & Susan Alamo Found. v. Sec'y of Lab.*, 471 U.S. 290,

296 (1985) (citations omitted).  "To plead a cause of action under the FLSA, [a plaintiff] must establish

that: (1) defendant[s] [are] employer[s] subject to the FLSA; (2) [the] plaintiff is an employee within

the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA."

*Rowe v. CC Rest. & Bakery, Inc.*, No. 17-CV-01423 (CBA)(PK), 2019 WL 4395158, at *4 (E.D.N.Y.

Aug. 15, 2019), *R&R adopted*, 2019 WL 4393987 (E.D.N.Y. Sept. 13, 2019) (citing *Saucedo v. On the Spot

Audio Corp.*, No. 16-CV-451 (CBA)(CLP), 2016 WL 8376837) (E.D.N.Y. Dec 21, 2016), *R&R adopted*,

2017 WL 780799 (E.D.N.Y. Feb. 28, 2017)), *vacated sub nom.*, 2018 WL 4347791 (E.D.N.Y. Jan. 23,

2018) (vacated on unrelated grounds)).  Courts in the Second Circuit have "treated employment for

FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality

of the circumstances." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141–42 (2d Cir. 2008).

### 1.    Whether Defendants are Employers

The FLSA broadly describes an employer as "any person acting directly or indirectly in the

interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and does not define the term

"employer" in the first instance.  *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 (2d Cir. 2013).

A defendant is an employer under the FLSA if it meets the criteria for either enterprise or

individual coverage.  *See Rowe*, 2019 WL 4395158 at *4.  The individual coverage test considers the

employment actions of each plaintiff to determine whether "the employees themselves are 'engaged in commerce.'"  *Id.* (quoting *Saucedo*, 2016 WL 8376837, at *4).  Even if the plaintiffs are not themselves engaged in commerce, a defendant may meet the enterprise coverage test if the defendant has employees engaged in commerce or in the production of goods for commerce, "or . . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000."  29 U.S.C. § 203(s)(1)(A)(i-ii); *see also Fermin v. Las Delicias Peruanas Rest. Inc.*, 93 F. Supp. 3d at 33.  "Commerce" is "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."  29 U.S.C. § 203(b).  Even local activities may meet this test if "an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce . . ." *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011) (quoting *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998)).

An employee is "engaged in commerce" if he is "in the 'channels of interstate commerce,' . . . as distinguished from those who merely affected that commerce."  *McLeod v. Threlkeld*, 319 U.S. 491, 493–94 (1943) (internal citation omitted).  "According to the Department of Labor, individual employees are engaged in commerce 'when they are performing work involving or related to the movement of persons or things (whether tangibles or intangibles, and including information and intelligence)' between states." *Klimchak v. Cardrona, Inc.*, No. 09-CV-4311 (MKB), 2014 WL 3778964, at *6 (E.D.N.Y. July 31, 2014) (citing 29 C.F.R. § 779.103).

Plaintiff alleges that Whitestone had at least $500,000 in annual revenue and that Defendants are employers engaged in interstate commerce (or are alternatively engaged in the production of goods for interstate commerce).  (Compl. ¶¶ 1–16.)  These allegations are sufficient to establish that Defendants were required to comply with FLSA's minimum wage and overtime requirements because

it is reasonable to infer that as an HVAC mechanic, Plaintiff handled tools and materials that were moved via interstate commerce. *See Brummell v. K1 HVAC Inc.*, No. 19-CV-5488 (FB) (RML), 2021 WL 3888138, at *3 (E.D.N.Y. Aug. 13, 2021) (inferring that "the tools, equipment, and HVAC parts allegedly handled by defendants' employees [in installing and repairing HVACs] 'have been moved in or produced for [interstate] commerce'"); *Huerta v. Victoria Bakery*, No. 10-CV-4754 (RJD)(JO), 2012 WL 1107655, at *2 (E.D.N.Y. Mar. 30, 2012) (the court can "infer[ ] the requisite interstate commerce connection under [a] sensible approach . . . .").

Individual Defendants are also employers for FLSA purposes. With respect to whether an individual is an employer for FLSA purposes, "[t]he underlying inquiry in determining 'employer' status is whether the individual possessed operational control over employees . . . ." *Tapia v. BLCH 3rd Ave. LLC*, 906 F.3d 58, 61 (2d Cir. 2018) (per curiam). "[T]o be an 'employer,' an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." *Irizarry*, 722 F.3d at 109. "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Id.* at 110. The analysis of whether an individual is an "employer" is also guided by the "economic realities" test set forth in *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8 (2d Cir. 1984). *Irizarry*, 722 F.3d at 110. Factors that the Court may consider include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter*, 735 F.2d at 12 (quoting *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)). "The 'economic reality' test encompasses the totality of circumstances, no one of which is exclusive." *Irizarry*, 722 F.3d at 106 (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)).

Plaintiff alleges that Individual Defendants hired and fired employees, controlled working

conditions, set the rate and manner of payment, and maintained employment records. (Compl. ¶¶ 10–12, 33.) These allegations closely track the *Carter* factors and for default judgment purposes are sufficient to establish that Individual Defendants were Plaintiff's employers.

2.    <u>Whether Plaintiff was an Employee</u>

An "employee" under the FLSA is likewise broadly defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). Plaintiff alleges that he was employed by Defendants from May 2018 through November 2022. (Compl. ¶ 18.; Pl. Decl. ¶ 5.) Given that Defendants are employers under the factors outlined *supra*, this is sufficient to establish that Plaintiff was an employee under the FLSA.

3.    <u>Whether any FLSA exemption applies</u>

Finally, Plaintiff must show that he is not exempt from the FLSA's protections. *Fermin*, 93 F. Supp. 3d at 32. "Section 13 of the FLSA contains a litany of exemptions to the minimum wage requirement." *Chen v. Major League Baseball*, 6 F. Supp. 3d 449, 454 (S.D.N.Y. 2014), *aff'd sub nom. Chen v. Major League Baseball Properties, Inc.*, 798 F.3d 72 (2d Cir. 2015). As a mechanic performing HVAC installation and repairs, which involves repetitive operations with his hands, physical skill, and energy, and with no apparent supervisory responsibilities, Plaintiff meets those criteria and thus is not exempt from the FLSA's protections. *See, e.g.*, *Boiko v. Coastal Air Inc.*, No. 20-CV-1226 (PKC)(CLP), 2021 WL 7830783, at *3 (E.D.N.Y. Aug. 4, 2021) (finding that HVAC technicians with no supervisory or other responsibilities were protected by the FLSA).

## C.    *Employment Relationship Under the NYLL*

To prevail on a NYLL claim, Plaintiff must establish that his employment relationship with Defendants falls within the ambit of the NYLL, which applies to "any person employed for hire by an employer in any employment." NYLL § 190(2). "Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the

law." *Garcia v. Badyna*, No. 13-CV-4021 (RRM)(CLP), 2014 WL 4728287, at *6 (E.D.N.Y. Sept. 23, 2014). Otherwise, the NYLL's definition of "employer" is "nearly identical" to the FLSA's definition, and analysis of the employment relationship under both statutes is based on the same factors. *See Mahoney v. Amekk Corp.*, No. 14-CV-4131 (ENV)(VMS), 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016), *R&R adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016) (holding that NYLL employment relationship analysis is "consistent" with FLSA employment relationship analysis and collecting cases). Furthermore, the NYLL and FLSA definitions of "employer" are coextensive. *See Fermin*, 93 F. Supp. 3d at 37. As a result, Defendants are Plaintiff's employers under the NYLL.

### D.    Overtime Claims

Under both the FLSA and the NYLL, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week. . . . " *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)); *see also* NYLL §§ 650 *et seq.*; 12 N.Y.C.R.R. § 142-2.2). To support "a reasonable inference" that he or she worked more than forty hours in a given week, *Nakahata*, 723 F.3d at 201, a plaintiff must sufficiently allege some uncompensated time in excess of forty hours, *Lundy*, 711 F.3d at 114, and provide "sufficient detail about the length and frequency of the[ ] unpaid work." *Nakahata*, 723 F.3d at 201; *see also Fermin*, 93 F. Supp. 3d at 44–45 (allegation that plaintiff worked over forty hours a week sufficiently established a claim for overtime).

A plaintiff's submission of "a sworn declaration as to the hours he worked and the amount he was paid, in addition to alleging consistent factual allegations in his Complaint," is "a sufficient evidentiary basis upon which the Court may calculate damages." *Montanes v. Avanti Pizza 2 Inc.*, No. 21-CV-586 (ERK), 2022 WL 17820103, at *3–4 (E.D.N.Y. Oct. 20, 2022); *see also, e.g., Diaz v. Rene French Cleaners, Inc.*, No. 20-CV-2848 (RRM)(RER), 2022 WL 4646866, at *7 (E.D.N.Y. Aug. 29, 2022). Plaintiff has provided such a declaration. (Pl. Decl. ¶ 10.)

Plaintiff states in his Declaration that he routinely worked an average of two additional hours each day for five days per week, totaling approximately fifty hours per week.[3] (Pl. Decl. ¶ 17.) Throughout this period, Defendants paid Plaintiff his regular hourly rate up to forty hours per week but never paid Plaintiff for the estimated ten hours of overtime he worked per week. (Pl. Decl. ¶¶ 9, 17.) These allegations establish Defendants' liability for failure to pay Plaintiff overtime under both the FLSA and the NYLL during the relevant time period. *See Newman v. W. Bar & Lounge, Inc.*, No. 20-CV-1141 (KAM)(RER), 2021 WL 2401176, at *7 (E.D.N.Y. June 11, 2021) (upon default, a plaintiff's sworn statement estimating his schedule and pay was enough to establish that he worked over forty hours a week without time-and-a-half compensation, subjecting defendants to liability under the FLSA and the NYLL).

### E.    *Wage Notice and Wage Statement Claims*

Plaintiff alleges violations of NYLL §§ 195(1) and 195(3), the statute's wage notice and statement provisions. (Compl. ¶¶ 68, 72.) These provisions are also referred to as the Wage Theft Prevention Act ("WTPA"), which was enacted "to expand the rights of employees and to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." *Cuzco v. F & J Steaks 37th St. LLC*, No. 13-CV-1859 (PAC), 2014 WL 2210615, at *4 (S.D.N.Y. May 28, 2014) (quoting Bill S8380–2009, Revised 06/29/10, Summary of Specific Provisions). Section 195(1)(a) requires employers to provide employees at the time of hire with a wage notice containing, *inter alia,* the rate of pay, the basis thereof, the pay schedule, and information identifying the employer in both English and the primary language of the employee. Section 195(3) requires employers to provide employees with "a statement with every payment of wages" listing various information, including the dates of work covered by the payment, information identifying the

---

[3] The Memorandum states that Plaintiff worked four hours of overtime each week instead of ten, but I consider the statement in Plaintiff's sworn declaration to be correct.

employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked.  NYLL §§ 198(1-b) and 198(1-d) impose statutory damages for violations of these provisions.

In order to have Article III standing in federal court, plaintiffs must show that they suffered a concrete and particularized injury-in-fact.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992); U.S. Const. art. III, § 2, cl. 1.  Bare allegations of an "informational injury," unaccompanied by allegations of adverse effects or downstream consequences from failing to receive the required information, are insufficient to establish Article III standing.  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 442 (2021); *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022).  "In other words, [the plaintiff] must show that he has an 'interest in using the information . . . beyond bringing [his] lawsuit'" to establish an Article III injury-in-fact.  *Id.* (citing *Laufer v. Looper*, 22 F.4th 871, 881 (10th Cir. 2022)).

Before the Supreme Court's decision in *TransUnion LLC v. Ramirez*, courts within the Second Circuit found that bare allegations of WPTA violations satisfied the injury-in-fact requirement because a WPTA plaintiff identified "procedural deficiencies that entail[ed] a concrete risk of harm to an interest identified by the legislature."  *See, e.g., Imbarrato v. Banta Mgmt. Servs., Inc.*, No. 18-CV-5422 (NSR), 2020 WL 1330744, at *8 (S.D.N.Y. Mar. 20, 2020), *abrogated by Jackson v. ProAmpac LLC*, 694 F. Supp. 3d 352, 363 (S.D.N.Y. Sept. 25, 2023); *see also Strubel v. Comenity Bank*, 842 F.3d 181, 189 (2d Cir. 2016) ("Where Congress confers a procedural right in order to protect a concrete interest, a violation of the procedure may demonstrate a sufficient risk of real harm to the underlying interest to establish concrete injury without need [to] allege any additional harm beyond the one Congress has identified.").

In *Transunion*, however, the Supreme Court explicitly rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement when an informational statutory violation occurs, stressing that "an injury in law is not an injury-in-fact . . . ."  *Id.* at 426–27 (quoting *Spokeo, Inc. v. Robins*,

578 U. S. 330, 340 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation")).

Applying *Transunion*, a majority of courts in the Second Circuit that have considered WTPA standing have held that "a plaintiff lacks standing to recover for a wage notice or statement violation . . . when the plaintiff pleads nothing more than the statutory violation and a demand for damages." *Montalvo v. Paul Bar & Rest. Corp.*, No. 22-CV-1423 (JLR)(SN), 2023 WL 5928361, at *3 (S.D.N.Y. Sept. 12, 2023) (collecting cases). Courts have required a plaintiff to "link" a defendant's failure to provide her with wage information to the failure to lawfully compensate her. *See Gaskin v. Brooklyn Suya Corp.*, No. 22-CV-5648 (ENV)(LB), 2023 WL 9232962, at *8 (E.D.N.Y. Oct. 26, 2023) (collecting cases).

In a handful of cases, however, courts have found that WTPA standing is established even without specific allegations of downstream harms. *See, e.g., Bueno v. Buzinover*, No. 22-CV-2216 (PAE)(KHP), 2023 WL 2387113, at *3 (S.D.N.Y. March 7, 2023) (rejecting magistrate judge's recommendation that there was no standing and finding that harms resulting from wage notice and statement violations can be considered concrete "without requiring a specific showing as to the downstream impact on the plaintiff of the non-provision of the required notice" by considering the legislature's purpose in enacting the statute); *Bello v. Pro-Line Pumping Corp.*, No. 22-CV-4081 (RPK)(RML), 2023 WL 8260830, at *9 (E.D.N.Y. June 20, 2023) (bare assertion that plaintiffs never received wage statements and notices were sufficient to establish concrete harm and standing because they were accompanied by claims of wage theft, and "the realization of the downstream harm the statute seeks to prevent—wage theft—is evident on the face of the pleadings").

While it may be evident from the pleadings that wage theft has occurred, it is not always the case that such theft flows from the informational deficiency of not receiving the wage notice or statements. It is possible for a plaintiff to have obtained knowledge of the information that would

14

otherwise be in the required records through other means.  And wage theft sometimes occurs even in the face of full knowledge.  Thus, I agree with the majority line of reasoning.  After *Transunion*, a bare allegation of a statutory violation no longer suffices to satisfy standing without an additional allegation of some link between the failure to provide wage notice or statements—with their concomitant information—and some concrete injury, such as the wage theft alleged elsewhere in the pleadings.

Here, Plaintiff fails to allege any connection or "link" between Defendants' failure to lawfully compensate him and failure to provide notice under the NYLL.  *See Sanchez v. Tresely*, No. 19-CV-4524 (KAM)(PK), 2023 WL 2473070, at *1 (E.D.N.Y. Mar. 13, 2023) (finding plaintiff's allegation that defendant willfully failed to keep payroll records and post notices of wage requirements to be insufficient to demonstrate injury).  Accordingly, I find Plaintiff's allegations insufficient to establish Article III standing, and therefore liability, for violations of NYLL §§ 195(1)(a) and 195(3).

## V.   **Damages**

### A.    *Overtime Damages*

Plaintiff is entitled to be paid an overtime rate for all hours worked over forty hours per week at 1.5 times the greater of his regular rate of pay or the minimum wage under both the NYLL and the FLSA.  *See, e.g.*, *Perez Campos v. Quentin Mkt. Corp.*, No. 16-CV-5303, 2018 WL 9945754, at *4, *8 (E.D.N.Y. Oct. 17, 2018).

Plaintiff worked 1,675 days between May 1, 2018 and November 30, 2022, consisting of 239 weeks and two days.  According to Plaintiff's damages chart, he was paid $900 each week at a rate of $22.50 per hour.  (Dkt. 15-3.)  Thus, he was paid for 40 hours per week.  He was entitled to be paid the overtime rate ($33.75) for the ten overtime hours he worked each week, i.e., $337.50 per week.[4]

---

[4] Plaintiff alleges two specific instances in which he worked more than two additional hours in a day.  On May 13, 2022, Plaintiff worked from 7:30 a.m. to 9:45 p.m., i.e., fourteen hours and fifteen minutes.  (Compl. ¶¶ 29–30.)  On December 13, 2021, Plaintiff worked from 8:00 a.m. to 7:15 p.m., i.e., eleven hours and fifteen minutes.  (Compl. ¶¶ 31–32.)  However, he does not request additional overtime payments for this time.

Thus, for the 239 weeks, he was owed $80,662.50.

Accordingly, I respectfully recommend that Plaintiff be awarded **$80,662.50** in unpaid overtime wages under the NYLL.[5]

### B.    Liquidated Damages

Plaintiff may recover liquidated damages under the NYLL equal to the amount owed for his unpaid overtime compensation.  NYLL § 198(1-a).

If the employer shows that "the act or omission giving rise to such action was [performed] in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the NYLL, a court may decide not to award liquidated damages.  *See* NYLL § 198(1-a) (no liquidated damages awarded where the defendant demonstrated good faith).  Because Defendant did not respond to the Motion, there is no showing of good faith, and liquidated damages are appropriate.  *See Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695 (ARR)(MDG), 2015 WL 1529653, at *12 (E.D.N.Y. Mar. 31, 2015) (finding that since the defendants defaulted, they did not show that "they acted in good faith," and awarding the plaintiff liquidated damages).

Accordingly, I recommend that Plaintiff be awarded **$80,662.50** in liquidated damages under the NYLL.

### C.    Prejudgment Interest

Plaintiff seeks prejudgment interest under the NYLL.  (Compl. ¶ C.)  Prejudgment interest is available for underpayments under the NYLL, including overtime.  *See* NYLL § 198(1-a); *Fermin*, 93 F. Supp. 3d at 30 (calculating prejudgment interest based on unpaid minimum wages, overtime pay, spread-of-hours pay, and misappropriated tips).

In New York, prejudgment interest accrues at the statutory rate of nine percent per year.  N.Y.

---

[5] I do not calculate overtime wages under federal law because the FLSA statute of limitations precludes recovery for violations occurring before April 14, 2020.

C.P.L.R. § 5004. "Where . . . damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." *Id.* § 5001(b). Courts have "wide discretion in determining a reasonable date from which to award pre-judgment interest." *Conway v. Icahn & Co., Inc.*, 16 F.3d 504, 512 (2d Cir. 1994). "Most courts in this district calculate simple prejudgment interest in NYLL actions from the midpoint date of the claims through the date judgment is entered." *Perez Campos*, 2018 WL 9945754, at *8 (citing *Fermin*, 93 F.Supp.3d at 49.) Other courts have used the midpoint between the first and last dates of the plaintiff's NYLL claims. *See, e.g.*, *Hernandez v. NJK Contractors, Inc.*, 09-CV-4812 (RER), 2015 WL 1966355, at *51 (E.D.N.Y. May 1, 2015).

As Plaintiff's overtime wage claim under the NYLL covers the period from May 1, 2018 to November 30, 2022, the midpoint for the purpose of calculating prejudgment interest of underpayments is August 15, 2020. Plaintiff's unpaid overtime wage damages are $80,662.50.

Prejudgment interest on those damages at a rate of nine percent per year comes to $7,259.63; this results in daily interest of $19.89. Accordingly, I respectfully recommend that Plaintiff be awarded prejudgment interest of $19.89 per day from August 15, 2020 through the entry of judgment.

### D.    Post-Judgment Interest

Plaintiff also seeks post-judgment interest, which "shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a); *see, e.g., Fermin*, 93 F. Supp. 3d at 53. Accordingly, I recommend that Plaintiff be granted post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

### E.    Fifteen Percent Increase in Penalty if Damages not Paid within Ninety Days

Plaintiff does not seek an automatic increase of fifteen percent for any unpaid amount of the judgment still pending after ninety days, as provided for in NYLL § 198(4). However, that provision

mandates that "any judgment or court order awarding remedies under this section *shall provide* that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent."  NYLL § 198(4) (emphasis added); *see also Rodriguez v. Solares Corp.,* No. 16-CV-3922 (CBA)(SMG), 2018 WL 7252949, at *12 (E.D.N.Y. Aug. 14, 2018), *R&R adopted*, 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019) (applying NYLL § 198(4)'s fifteen percent penalty to all amounts awarded pursuant to the NYLL).  This award is therefore given as a matter of course, whether Plaintiff requests it or not.

Accordingly, Plaintiff's damages under the NYLL shall increase by fifteen percent if Defendants fail to timely satisfy the judgment.

## VI.    <u>Attorneys' Fees and Costs</u>

Prevailing plaintiffs are allowed to recover reasonable attorneys' fees and costs under both the FLSA and the NYLL.  *See* 29 U.S.C. § 216(b); NYLL § 663(1).

Plaintiff requests $4,032.00 in fees and costs.  (Pollack Decl. ¶ 13.))

### A.    *Attorneys' Fees*

District courts have broad discretion to determine the amount of attorneys' fees awarded, and the party requesting fees must submit documentation to support its request.  *See, e.g., Mahoney,* 2016 WL 6585810, at *18.  Courts must "us[e] their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of each component of a fee award."  *Century 21 Real Estate LLC v. Bercosa Corp.*, 666 F. Supp. 2d 274, 298 (E.D.N.Y. 2009) (quotation and citation omitted).

"[T]he lodestar [method]—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'"  *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n. v. Cnty. of*

*Albany*, 522 F.3d 182, 183 (2d Cir. 2008)).  Courts determine what constitutes a reasonable hourly rate through application of "the forum rule," which states that "courts should generally use the hourly rates employed in the district in which the reviewing court sits." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quotations and citation omitted).

          1.   <u>Hourly Rate</u>

Plaintiff requests attorneys' fees for work performed by Yale Pollack ("Pollack"). Pollack opened his solo practice in 2015; his practice focuses on plaintiff-side employment law. (Pollack Decl. ¶ 17.)  Pollack requests a billing rate of $450 per hour. (Pollack Decl. ¶ 19.)

The Eastern District has recently awarded hourly rates ranging from $300 to $450 for partners in FLSA cases. *Martinez v. New 168 Supermarket LLC*, 19-CV-4526 (CBA)(SMG), 2020 WL 5260579, at *8 (E.D.N.Y. Aug. 19, 2020) (collecting cases), *R&R adopted*, 2020 WL 5259056 (Sept. 3, 2020).

Pollack requests a billing rate of $450.00 per hour.  This is at the high end of the generally accepted range for partners involved in FLSA cases before this Court.  *See Martinez*, 2020 WL 5260579 at *8 (collecting cases).  The high end of the range is typically reserved for senior attorneys in the district working on complex matters. *Avedana v. Casa Ofelia's Bakery LLC*, No. 20-CV-2214 (DG)(AKT), 2021 WL 4255361, at *18 (E.D.N.Y. Aug. 19, 2021), *R&R adopted*, 2021 WL 4248857 (E.D.N.Y. Sept. 17, 2021); *see, e.g., Kliger v. Liberty Saverite Supermarket Inc.*, No. 17-CV-2520 (FB)(ST), 2018 WL 4782342, at *9 (E.D.N.Y. Sept. 7, 2018), *R&R adopted*, 2018 WL 4783964 (E.D.N.Y. Oct. 3, 2018) (reducing the hourly rate of an attorney with over twenty years of experience from $450.00 to $350.00 because of "the nature and [lack of] complexity of the action.").  Furthermore, in at least some instances this Court has recently found that the high end of hourly rates for solo practitioners like Pollack is around $400.00. *See, e.g., Avedana*, 2021 WL 4255361, at *18 (citing *Raja v. Burns*, No. 19-CV-1328, 2021 WL 1394638, at *4 (E.D.N.Y. Feb. 2, 2021), *R&R adopted*, 2021 WL 1099931 (E.D.N.Y. Mar. 23, 2021) ("Courts in this District have awarded solo practitioners hourly rates ranging

from $300 to $400.") (vacated and remanded on grounds of reasonableness of number of hours billed). Pollack was recently awarded $415.00 by this Court for similar work. *Catalan v. Blinks Deli Inc.*, No. 22-CV-6159 (NRM)(ST) (E.D.N.Y. Sept. 1, 2023).

Accordingly, I respectfully recommend finding that the reasonable rate for Pollack is $415.00.

2.    <u>Reasonableness of Time Billed</u>

Plaintiff requests attorneys' fees for 7.6 hours of Pollack's work. (Pollack Decl. ¶¶ 13, 16.)

"To determine whether the number of hours spent by Plaintiff's counsel was reasonable, the Court must 'use [its] experience with the case, as well as [its] experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case.'" *Litkofsky v. P & L Acquisitions, LLC*, No. CV-15-5429 (DRH)(AKT), 2016 WL 7167955, at *10 (E.D.N.Y. Aug. 19, 2016), *R&R adopted*, No. CV-15-5429 (DRH)(AKT), 2016 WL 7168069 (E.D.N.Y. Dec. 8, 2016) (quoting *Fox Indus., Inc. v. Gurovich*, No. 03-CV-5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (alterations in original). Plaintiff submitted contemporaneous time sheets showing work performed in this case from April 4, 2023 to November 16, 2023. (Dkt. 20.)

In determining a reasonable number of hours, district courts should "exclude excessive, redundant or otherwise unnecessary hours." *Quarantino v. Tiffany & Co.,* 166 F.3d 422, 425 (2d Cir. 1999). Counsel billed a total of 7.6 hours for reviewing documents and drafting the Complaint (3.8 hours), finalizing and filing documents with the Court (1.8 hours), and drafting Plaintiff's motion for default judgment (2.0 hours). (Dkt. 20.) Based on the descriptions provided, hours billed for each task appear to be reasonable. *Id.*

Accordingly, I respectfully recommend that Plaintiff be awarded **$3,154.00** in attorneys' fees.

**B.    *Costs***

Plaintiff requests $612.00 in costs. (Pollack Decl. ¶¶ 13, 16.) At the time of the motion was filed, Plaintiff did not describe the costs or provide documentation supporting the request. The Court

directed Plaintiff to provide documentation supporting these costs, but Plaintiff failed to do so. (July 11, 2024 Order; Dkt. 20.)

I take judicial notice of the filing fee of $402. *See Joe Hand Promotions, Inc v. Bernal*, 2019 WL 885930, at *6 (awarding plaintiff the $400 filing fee after taking judicial notice of it). However, the Court cannot approve costs other than the filing fee in this District without sufficient documentation. *Gao v. Jian Song Shi*, No. 18-CV-2708 (ARR)(LB), 2021 WL 1949275, at *19 (E.D.N.Y. Apr. 30, 2021), *R&R adopted*, No. 18-CV-2708 (ARR)(LB), 2021 WL 1946322 (E.D.N.Y. May 15, 2021).

Accordingly, I respectfully recommend that Plaintiff be awarded **$402.00** in costs.

## VII.   <u>Joint and Several Liability</u>

When multiple defendants are found to be a plaintiff's employer, "each [d]efendant is jointly and severally liable under the FLSA and NYLL for any damages awards made in [that] [p]laintiff['s] favor." *Fermin*, 93 F. Supp. 3d at 37; *see also Pineda v. Masonry Constr., Inc.*, 831 F. Supp. 2d 666, 685-86 (S.D.N.Y. 2011) (holding that plaintiff's allegations that the individual defendant "was an owner, partner, or manager" of the corporate defendant, "coupled with [d]efendants' default, suffice to . . . impose joint and several liability on each [defendant] for their respective violations of the wage laws." (quotation and citation omitted)).

Because, as discussed above, I find that each of the Defendants served as Plaintiff's employer, I respectfully recommend that Defendants be held jointly and severally liable for their violations of the FLSA and NYLL.

## <u>CONCLUSION</u>

Based on the foregoing, I respectfully recommend that the Motion be granted as to Defendants' failure to pay Plaintiff overtime wages, but denied as to violations of NYLL §195(1) and NYLL §195(3). I respectfully recommend that damages be awarded under the NYLL as follows:

-   **$80,662.50** for unpaid overtime wages;

- **$80,662.50** in liquidated damages;

- **$3,154.00** in attorneys' fees; and

- **$402.00** in costs.

I further recommend that prejudgment interest be awarded at a daily rate of **$19.89** from August 15, 2020 until the date of judgment. In addition, post-judgment interest shall accrue thereafter until payment of the judgment amount, and a fifteen-percent increase in penalty if damages under the NYLL are not paid within ninety days of judgment or the expiration of time to appeal.

Any written objections to this Report and Recommendation must be filed within 14 days of service of this report. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO RECOMMENDED:**

*Peggy Kuo*
_____

PEGGY KUO
United States Magistrate Judge

Dated:    Brooklyn, New York
          August 21, 2024