UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
ANIBAL GUTAMA,                                    Civil Action No.:
                                                  23-CV-2802-ENV-PK

                Plaintiff,

    -against-

WHITESTONE AIR INC., KONSTANTINA BISCARDI
a/k/a KONSTANTINA TEGERIDES, and
MICHAEL TEGERIDES,

                Defendants.
-----------------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO VACATE THE DEFAULT JUDGMENT**

Of Counsel:
Yale Pollack, Esq.

**SUMMARY OF RELEVANT FACTS**

Plaintiff Anibal Gutama ("Plaintiff") respectfully submits this memorandum of law in opposition to Defendants Whitestone Air Inc. ("Whitestone"), Konstantina Biscardi a/k/a Konstantina Tegerides ("Biscardi"), and Michael Tegerides ("Tegerides") (collectively "Defendants") motion to vacate the default of $195,909.40 judgment entered against them, plus interest, on November 22, 2024 (the "Judgment"). *ECF No. 23*.

This was a willful default. Despite knowing of this action since its inception, Defendants have intentionally avoided and disregarded it. It was only after Plaintiff obtained the Judgment and restrained the account of Tegerides that Defendants decided to participate. Defendants' motion is riddled with misrepresentations and falsehoods. They do not meet the criteria to vacate the Judgment against them.

To begin with, their argument that their default was not willful is an easily disprovable lie. As noted in the accompanying Declaration of Yale Pollack ("Pollack Dec."), after serving the Complaint in this action, Mr. Pollack was contacted by Biscardi on September 7, 2023 advising that she owns "pizzerias" and claiming that Plaintiff was paid every dollar he was owed so that she would be seeking counsel to appear in this action to respond to the Complaint.

Based on the call from Biscardi, and understanding the Court's preference for deciding claims on the merits, on September 12, 2023, Mr. Pollack wrote to the Court seeking to extend the time to file a default motion. Specifically, Mr. Pollack wrote that he

> [W]as contacted by one of the individual defendants, who advised that their attorney will be filing a notice of appearance in the action and seeking to answer. Rather than continue with a default motion at this time, which is currently due this Friday, September 15, 2023, in order to save judicial time and resources, I respectfully request that the Court adjourn the deadline for the default judgment for

2

>approximately one month until October 20, 2023 for Plaintiff to file his default motion if Defendants do not appear by that date.

*Pollack Dec., Exhibit "A"; see also ECF No. 13*. The Court granted Plaintiff's application and extended the deadline to file the default motion until October 20, 2023. *See ECF Electronic Order dated September 12, 2023*.

When Defendants did not appear by the next scheduled date set by the Court, on October 18, 2023, in an attempt to still have the matter heard on the merits, Mr. Pollack wrote to the Court again asking for more time before submitting the default motion based on Biscardi's prior contact with the office and advising that an attorney would be filing a notice of appearance on Defendants' behalf. *Pollack Dec., Exhibit "B"; see also ECF No. 14*. The Court again granted Plaintiff's application and extended the deadline to file the default motion until December 1, 2023. *See ECF Electronic Order dated October 19, 2023*.

After Defendants failed to appear by the extended December 1, 2023 deadline, Plaintiff proceeded to file his motion for a default judgment against Defendants as required by the Court. *ECF Nos 15-16*. The motion was then referred to Magistrate Kuo for a report and recommendation. *See ECF Electronic Order dated November 21, 2023*.

On July 3, 2024, the Court issued an Order requiring certain deficiencies in the default motion to be addressed and to supplement the papers by July 12, 2024. *See ECF Electronic Order dated July 3, 2024*. One of the deficiencies was to ensure that the papers were served at the physical address located for Whitestone because it was only previously served via the Secretary of State. Accordingly, on July 10, 2024, Plaintiff complied by physically serving the motion papers on Defendants at their ***only*** known physical address, 149-44 15th Drive, Whitestone, New York 11357. *See ECF No. 18*.

3

Coincidentally, on the same date the papers were properly served at Defendants' physical address (i.e. July 10, 2024), Mr. Pollack was contacted by a purported incoming attorney for Defendants, Elio Forcina, Esq., who advised that he was possibly going to represent Defendants in the action. Accordingly, on that date, Mr. Pollack provided copies of the default papers to Mr. Forcina that were filed against Defendants, inquiring whether he would be "representing them and will accept service of the papers." *Pollack Dec., Ex. "E."*

That same day, Mr. Forcina asked that Mr. Pollack call him, further stating that he "will see if they want to retain me and settle this matter." *Pollack Dec., Ex. "F."* Mr. Pollack spoke with Mr. Forcina who said that he represented Defendants in the past and will see if he will enter an appearance in this action on their behalf.

On July 10, 2024, after communicating with Mr. Forcina about his possible representation of Defendants, Mr. Pollack requested yet additional time to correct the other deficiencies cited by the Court in its July 3, 2023 Order – being to provide attorney time records spent on the action and affidavit that an investigation into whether Defendants were in the military was conducted (which revealed they were not) (*see ECF Nos. 19-20*) – the Court permitted him to supplement such papers by July 18, 2024.

Critically, between July 12 and July 17, 2024, Mr. Pollack was continually contacting Mr. Forcina regarding the action, including following up on whether Mr. Forcina was going enter an appearance to represent Defendants in the action. *Pollack Dec., Ex. "G."* On July 16, 2024, Mr. Forcina wrote that he was "[m]ost likely meeting up tomorrow with them." *Id*. Mr. Pollack followed up with Mr. Forcina on July 16 and July 17, 2024 to remind him that the remaining default documents were due by July 18, 2024. *Id.* Mr. Forcina never appeared and, accordingly,

4

the default motion, with the additional information directed to be provided by the Court, was submitted on July 18, 2024. *ECF Nos. 19 and 20.*

To the extent Defendants argue that the corporation was served by the Secretary of State and by nail and mail, all other correspondence submitted by Plaintiff in this action – Secretary of State page, Facebook page, paychecks, work orders and W-2s (*see Pollack Dec., Exs. "C" to "D"; Gutama Dec.), Exs. "J" to "L"*) – confirm that Defendants were properly served at the physical address they maintained at all times (and continue to maintain), thereby defeating any claim that they were not properly served with process or on notice of this action since its inception. This includes both Biscardi and Tegerides being properly served at their last and only known address. *ECF Nos. 6 and 7.*

Thus, Defendants' argument rests on the Court believing that *every* piece of mail that was mailed to them concerning this case was destroyed or went missing even though Biscardi and her counsel acknowledging their awareness of the action before the default papers were filed. On top of that, this argument rests on ignoring that the corporate defendant was served via the Secretary of State.

As to any meritorious defense, Defendants willingly lied to this Court by claiming that Plaintiff was a 1099 independent contractor of theirs, without providing any support whatsoever for that position. To the contrary, as set forth in the Declaration of Anibal Gutama ("Gutama Dec."), Plaintiff has submitted documentation demonstrating the control and treatment Defendants maintained over him, including the facts that Defendants assigned Plaintiff work orders issued by them, provided Plaintiff with payroll checks and issued Plaintiff W-2s during his employment with them. *Gutama Dec., Ex. "J" to "L."*

5

Finally, Plaintiff would be prejudiced if the Judgment is vacated. Plaintiff, after waiting many years, is in the process of finally collecting *some* of the money he is owed and, it was only then, that Defendants filed the instant motion.

## LEGAL ARGUMENT

### DEFENDANTS DO NOT MEET THEIR BURDEN TO WARRANT VACATUR OF THE JUDGMENT AGAINST THEM

Courts consider three factors in deciding a motion to set aside a default judgment: "(1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party." *Group. One Ltd. v. GTE GmbH*, 625 F. Supp.3d 28, 54 (E.D.N.Y. 2022) (quoting *Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 186 (2d Cir. 2015)). With Defendants not satisfying any of these, the Judgment should remain undisturbed and Plaintiff additional seeks leave to move for attorneys' fees in connection with having to oppose this frivolous motion.

**A.   Defendants Willfully Defaulted In Failing To Respond To The Complaint**

A default is willful if "it is sufficient to conclude that the defendant defaulted deliberately." *LeGer v. Navila Asset Mgmt. Inc.*, 2023 U.S. Dist. LEXIS 19829, at *2 (E.D.N.Y. Feb. 6, 2023). In other words, while a finding of bad faith is not necessary, "[w]illfulness requires more than negligence or carelessness." *Id*.

"Of these three criteria, 'willfulness is preeminent, and a willful default will not normally be set aside.'" *Arista Records, Inc. v. Musemeci*, 2007 U.S. Dist. LEXIS 81630, at *12 (E.D.N.Y. Sept. 19, 2007) (quoting *MacEwen Petroleum, Inc. v. Tarbell*, 173 F.R.D. 36, 39 (N.D.N.Y. 1997)); *see Hernandez v. La Cazuela de Mari Rest., Inc.*, 538 F. Supp. 2d 528, 534 (E.D.N.Y. 2007) (notwithstanding the other factors, "a default judgment should not be vacated if the default

6

was willful"); *Finkel v. Hall-Mark Elec. Supplies Corp.*, 2011 U.S. Dist. LEXIS 76716, at *8 (E.D.N.Y. July 12, 2011) ("If a default is determined to be willful, that fact alone can justify denying a motion to vacate a default judgment").

"Where [a] defendant 'does not deny that he received the complaint, the court's orders, or the notice of default judgment' and 'does not contend that his non-compliance was due to circumstances beyond his control,' an inference of willful default is justified." *Bricklayers & Allied Craftworkers*, 779 F.3d 182 at 187.  Willfulness will, thus, be inferred if the defendant cannot "satisfactorily explain[]" its behavior. *See State Univ. of New York v. Triple O, LLC*, 2022 U.S. App. LEXIS 29627 at *6 (2d Cir. 2022) (affirming district court's finding where ignoring the complaint for several months and defaulting "purportedly due to their attorney's carefulness" satisfied the willfulness standard).  Willfulness will, likewise, be inferred whether the conduct "is egregious, not satisfactorily explained, or is rationalized by flimsy excuse." *Aetna Life Insc. Co. v. Licht*, 2004 U.S. Dist. LEXIS 21538, at *4 (S.D.N.Y. Oct. 25, 2004).

Defendants offer, at best, "flimsy excuses."  Preliminarily, they offer no excuse on why the corporate defendant, Whitestone, defaulted, which is not surprising. Whitestone was served on April 26, 2023, via the Secretary of State of New York, and the Secretary of State then mailed the pleadings to the address the defendant has registered with the State.  Defendants were thus on notice of this lawsuit by April 2023.  *ECF No. 8*.

Biscardi claims that upon learning of the action in February 2025, she "immediately responded to the lawsuit by and through counsel upon learning that our personal bank account had been frozen." *ECF No. 27 (Biscardi Dec., ¶10).*  This wholly ignores the fact that Plaintiff's counsel was in contact with Biscardi in September 2023 and, then again, with her purported incoming counsel, Mr. Forcina, in July 2024, before any default proceedings were finalized.

7

Biscardi offers no explanation as to why she, on her own behalf after the September 2023 conversation, or why her counsel, Mr. Forcina, after reaching out to Plaintiff's counsel in July 2024, took no immediate action to address the filed Complaint.

Here, Defendants' failure to take action to respond to a federal Court Summons and Complaint has not been "satisfactorily explained." *See Belizaire v. RAV Investigative and Sec. Services, Ltd.*, 310 F.R.D. 100, 105 (S.D.N.Y. 2015) (denying motion to vacate a default judgment because defendant offered "no explanation for its counsel's failure to take action.").

Accordingly, the Court should find on the instant record that Defendants' default was willful, with this factor weighing in favor of Plaintiff. *See U.S. v. Cirami*, 535 F.2d 736, 741 (2d Cir. 1976) (distinguishing personal problems of counsel where the "client's affidavit noted that he had made numerous inquiries of his former counsel who had either refused to answer or had assured him that the case was proceeding and would soon be settled" with a record "bereft of any indication of client diligence.").

Furthermore, the address at which Defendants were served was consistent with all other corporate documents on Whitestone's letterhead, being 149-44 15th Drive, Whitestone, New York 11357. *See Pollack Dec., Exs. "C" to "D"; Gutama Dec., Exs. "J" to "L."*

About four months after Defendants were served with process, Biscardi contacted Mr. Pollack to discuss the case filed against Defendants. She did not contend that Plaintiff was an independent contractor at that time but just stated that he was paid every dollar to which he was entitled and that she would be contacting her lawyer to contest the allegations in the Complaint, Mr. Forcina.

Thereafter, multiple attempts were made to communicate with Mr. Forcina, with him responding sporadically to Mr. Pollack's emails, but despite his promises discussing the case with

8

Defendants and possibly meeting with them so that he could enter an appearance on the case, he went silent, warranting the filing of the default motion against Defendants. *See Pollack Dec., Ex. "G."*

Defendants' arguments on who is listed on the Affidavit of Service cannot erase away the fact the corporate defendant was served back in April 2023 and that the Secretary of State then mailed the pleadings to the Defendant. *In re Templos*, 2024 U.S. Dist. LEXIS 113754 at *6-10 (E.D.N.Y. Jun. 27, 2024) (holding defendants willfully defaulted when the corporate defendant was served via the Secretary of State and individual defendant claimed they did not collect the mail at the registered address). Furthermore, Tegerides and Biscardi were physically served at the only location listed on all corporate and public documents at their residence and business address, being 149-44 15th Drive, Whitestone, New York 11357. *See Pollack Dec., Exs. "C" to "D"; Gutama Dec., Exs. "J" to "L."*

**B.   Defendants Do Not Have Meritorious Defenses To Plaintiff's Claims**

To make a sufficient showing of a meritorious defense in connection with a motion to vacate a default judgment, the defendant must present evidence of facts that, if proven at trial, would constitute a complete defense. *See Bisnow L.L.C. v Lopez-Pierre*, 2022 U.S. Dist. LEXIS 223953, at *21 (S.D.N.Y. Nov. 2, 2022) (no meritorious defense where the defendant "failed to file an answer or otherwise participate in the litigation."); *see also Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) ("A defense is meritorious if it is good at law so as to give the factfinder some determination to make.").

"Whether a defense is meritorious 'is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a

9

complete defense.'" *State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 167 (2d Cir. 2004).

Although there is a "low threshold of adequacy," *Gov't Emps. Ins. Co. v. Jacobson*, 2019 WL 10959842, at *4 (E.D.N.Y. Oct. 15, 2019), "[e]vidence beyond mere 'conclusory denials' is required," *Trustees of Bldg. Trades Educ. Benefit Fund v. Romero Elec. LLC*, 2021 WL 3604811, at *4 (E.D.N.Y. July 19, 2021).

Here, aside from two paragraphs in Biscardi's Declaration, no documentary or other evidentiary support is provided to support Defendants' position of Plaintiff being a 1099 independent contractor, such as an independent contractor agreement, 1099 IRS Form issued to Plaintiff, or other evidence that Plaintiff had his own van and tools, which actually contradicts the statements made by Biscardi to Plaintiff's counsel stating that he used a company van.

Biscardi does not cite one instance where Plaintiff refused a job that was assigned to him, that he held positions for other companies while employed by Whitestone, or that he otherwise was not subject to the work orders that he received from Defendants, which contained Defendants' directives of the work Plaintiff was to perform at the job site assigned to him along with the hours Plaintiff worked on that project. *Gutama Dec. Ex. "J."*

Indeed, almost identical facts to those posed here were set forth *in Guthrie v. Rainbow Fencing Inc.*, 2025 WL 871649 (E.D.N.Y. Mar. 20, 2025). In *Guthrie*, the defendants moved to vacate the default judgment against them arguing, *inter alia*, that the plaintiff was an independent contractor without any evidentiary support, such as not being on payroll, being paid cash for his services, being responsible for filing his own taxes and having a sporadic work schedule. *Id.* at *12.

The Court denied the defendants' purported defense that the plaintiff was an independent contractor because the defendant's "unsupported Declaration does not meet even the 'low threshold of adequacy' to support the independent-contractor defense, *Jacobson*, No. 15-cv-7236 (ERK) (RML), 2019 WL 10959842, at *4, as the Declaration offers "mere 'conclusory denials,'" *Romero Elec. LLC*, No. 19-cv-3515 (DRH) (AYS), 2021 WL 3604811, at *4; *see Am. All. Ins. Co. v. Eagle Ins. Co.,* 92 F.3d 57, 61 (2d Cir. 1996) ("A defense is meritorious if it is good at law so as to give the factfinder some determination to make."). "For example, the Burge Declaration's statements at best reference just two of the factors the Second Circuit employs to determine whether an individual is an employee or an independent contractor, which the Court does not find sufficiently 'present[s] evidence of facts that, if proven at trial, would constitute a complete defense.'" *Inversiones Errazuriz Limitada*, 374 F.3d at 167 (citation omitted).

Furthermore, in *Guthrie*, the Court noted that the defendants provided "no position description, no bank records for the 'cash payments,' no IRS Form 1099 for the years Mr. Burge claims that Plaintiff was an independent contractor, no records of dates that Plaintiff worked, albeit sporadically, or records of days that Plaintiff was not at work, and no work schedule." *Guthrie*, at *12.

Critically, here, Defendants do not challenge the hours worked or pay received as claimed by Plaintiff in his Complaint and the papers he submitted in support of his motion for a default judgment. Instead, they simply argue that Plaintiff was a 1099 independent contractor, which, as noted in *Guthrie*, is not enough, in and of itself, to support a meritorious defense by Defendants. Indeed, unlike *Guthrie*, Plaintiff here has provided evidentiary support that he was treated as an employee of Defendants, as he received weekly payroll checks with tax deductions, received daily assignments through work orders issued to him by Defendants, and received W-2 statements from

Defendants setting forth his gross and net earnings from Defendants for each year of employment with them. *Gutama Dec., Exs. "J" through "L."*

Defendants' conclusory statement that Plaintiff was a 1099 independent contractor, combined with Defendants' failure to present any facts or evidence of their alleged meritorious defense, dooms their motion. *See American Transit Ins. Co. v. Bilyk*, 546 F. Supp. 3d 192, 197 (E.D.N.Y. 2021) (finding mere possibility of a meritorious defense insufficient where the defaulting defendant's grounds for defense were "exclusively within their knowledge" and it "should have been straightforward for defendants to demonstrate by documentary evidence and affidavits.").

**C.     Plaintiff Will Be Unduly Prejudiced If The Judgment Is Vacated**

A plaintiff may demonstrate prejudice by showing "that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983). Prejudice may also be present if vacatur would "thwart plaintiff's recovery or remedy." *New York v. Green*, 420 F.3d 99, 110 (2d Cir. 2005). To meet this standard, "the plaintiff must demonstrate that any prejudice resulting from the defendant's default cannot be rectified in the Court in another manner were the default to be vacated." *Murray Eng'g, P.C. v. Windermere Props. LLC*, 2013 WL 1809637, at *5 (S.D.N.Y. Apr. 30, 2013).

A plaintiff will be unduly prejudiced when "the reopening of the default would thwart the plaintiff's recovery or remedy, result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud or collusion." *See Church & Dwight Co. v Kaloti Enters. of Michigan, L.L.C.*, 2011 U.S. Dist. LEXIS 110955 at *19 (E.D.N.Y. Sept. 27, 2011).

The concern is not "delay standing alone," but rather that "the passage of time makes it likely that evidence will be more difficult to locate now," and "[i]t would be unjust to make plaintiff[ ] start over again," especially where Defendants waited over a year to move to vacate. *Manzanares v. Your Favorite Auto Repair & Diagnostic Center, Inc.*, 2020 WL 7249249, at *6 (E.D.N.Y. July 2, 2020).

Plaintiff filed his Complaint on April 14, 2023, more than two years ago, and "[m]emories are also likely to fade over far shorter periods." *DeCurtis v. Upward Bound Int'l, Inc.*, 2012 WL 4561127, at *9 (S.D.N.Y. Sept. 27, 2012) (finding prejudice as part of Rule 60(b) analysis where complaint was filed three years prior); *Lazic v. Dorian Owners, Inc.*, 2011 WL 319879, at *2 (E.D.N.Y. Jan. 29, 2011) (finding vacatur of default would prejudice plaintiff in FLSA action where "plaintiff's ability to prove liability will likely turn on his recollection—and the credibility of that recollection—of the hours he worked during certain weeks," and where "Defendant's delay may have well led to a fading of his memories," thus finding "this [was] not a case where '[defendants'] [d]elay stand[s] alone' " (alteration in original).

That is happening here. Plaintiff is in the process of enforcing the Judgment and, only when their account was frozen did Defendants attempt to vacate the Judgment.

Furthermore, a significant amount of time has passed and Plaintiff has expended significant resources in attempting to secure the Judgment and then attempting to collect upon same, which it has done by freezing Tegerides' bank account.

Indeed, despite Mr. Pollack being contacted by Biscardi in September 2023, and then being in touch with her purported incoming counsel, Mr. Forcina, in July 2024, Plaintiff waited almost a year before knowledge of the default judgment papers being filed and then the resulting Judgment to be issued before appearing in the case, which only occurred after the bank account was

restrained.  *See Original Appalachian Artworks, Inc. v. Yuil Int'l Trading Corp.*, 105 F.R.D. 113, 116 (S.D.N.Y. 1985) ("A bona fide effort to find counsel is certainly relevant to the willfulness of a party's default.  But where a party is notified that he is in default and he apparently makes no effort to appear pro se or to explain his situation to the opposing party and the court, such neglect is inexcusable.").

Clearly, Plaintiff would be prejudiced by reopening this case when Defendants have not even set forth any evidentiary support to demonstrate that their default was not willful or that they have a meritorious defense to the claims.  Furthermore, vacatur would hinder Plaintiff's efforts to collect on the Judgment to which he is rightfully entitled.  *See Fedex Techconnect, Inc. v. OTI, Inc.*, 2013 U.S. Dist. LEXIS 139591 (S.D.N.Y. Sep. 23, 2013) (Plaintiff obtained a default judgment and restrained Defendant's bank account.  Defendant moved to vacate and the Court denied the motion, holding that lifting the restraint would prejudice Plaintiff "by providing Defendant further opportunities to hide its assets or otherwise evade payment of its debts.")

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion to vacate the Judgment, together with awarding Plaintiff such other and further relief as this Court deems just, equitable and proper, including attorneys' fees incurred in drafting opposition to Defendants' motion.

Dated:   May 7, 2025
         Syosset, New York

**THE LAW OFFICES OF YALE POLLACK**

By: _/s/ Yale Pollack_
    Yale Pollack, Esq.
*Attorney for Plaintiff*
66 Split Rock Rd
Syosset, New York 11791
(516) 634-6340