UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
ANIBAL GUTAMA,                              :
                                            :
                              Plaintiff,    :     **REPORT AND**
                                            :     **RECOMMENDATION**
              -against-                     :
                                            :     1:23-CV-2802 (ENV)(PK)
WHITESTONE AIR INC., KONSTANTINA            :
BISCARDI a/k/a KONSTANTINA                  :
TEGERIDES, and MICHAEL TEGERIDES,           :
                                            :
                              Defendants.   :
------------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

On November 22, 2024, default judgment was entered in favor of Plaintiff Anibal Gutama against Defendants Konstantina Biscardi, Michael Tegerides (together with Ms. Biscardi, "Individual Defendants"), and Whitestone Air Inc. ("Whitestone") (collectively, "Defendants"). (Default Judgment, Dkt. 23.) Defendants have filed a Motion to Vacate Default Judgment. ("Motion," Dkt. 25.) The Honorable Eric N. Vitaliano referred the Motion to me for a report and recommendation. For the reasons stated below, I respectfully recommend that the Motion be denied.

**I.     Relevant Factual and Procedural Background**

On April 14, 2023, Plaintiff filed the Complaint against Defendants, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 650 *et seq.* (Compl., Dkt. 1.) Individual Defendants are the owners of Whitestone, which is in the business of installing and repairing HVAC systems. (Compl. ¶¶ 8-9.) Plaintiff worked for Defendants as a mechanic from May 2018 through November 2022. (Compl. ¶¶ 18-19.)

Plaintiff filed Affidavits of Service stating that a process server served Individual Defendants on April 22, 2023 by (1) affixing and taping copies of the Summons and Complaint to

1

the entrance door of the premises at 149-44 15th Drive, Whitestone, New York 11357, and (2) mailing them to their last known place of residence.  (Affs. of Service, Dkts. 6, 7.)  The Affidavits of Service further stated that the process server attempted to serve Individual Defendants on April 20, 2023 at 9:15 a.m., April 21, 2023 at 7:37 a.m., and April 22, 2023 at 9:43 a.m., and that he "rang bell/knocked on door and there was no answer on all attempts of service." (*Id.*)

Plaintiff also filed an Affidavit of Service stating that Whitestone was served via the New York Secretary of State on April 26, 2023.  (Aff. of Service, Dkt. 8).

No Defendants answered the Complaint or otherwise appeared.  A certificate of default was entered against Defendants on June 12, 2023 (Dkt. 10), and the Court directed Plaintiff to file his motion for default judgment by September 15, 2023.  (Aug. 15, 2023 Order.)

On September 7, 2023, Ms. Biscardi called Plaintiff's counsel Yale Pollack, Esq. to discuss this case.  (Pollack Decl. ¶ 14, Dkt. 38.)  During that conversation, Ms. Biscardi told Mr. Pollack that "she paid Plaintiff every single dollar to which he was entitled," and "she was going to be speaking with her attorney about the matter, Elio Forcina, Esq."  (Pollack Decl. ¶¶ 14-15.)

On September 12, 2023, Mr. Pollack filed a letter requesting that the Court extend the deadline for filing the default judgment motion to October 20, 2023.  (Dkt. 13.)  In the letter, he stated that he "was contacted by one of the individual defendants, who advised that their attorney will be filing a notice of appearance in the action and seeking to answer."  (*Id.*)  The Court granted the request.  (Sept. 12, 2023 Order.)

On October 18, 2023, Mr. Pollack filed another letter requesting additional time to move for default judgment because "[o]ne of the individual defendants has been in contact with [him] advising that her attorney is going to be filing a notice of appearance in the action."  (Dkt. 14.)  The Court granted the request and extended the deadline for Plaintiff to file his motion for default judgment to December 1, 2023.  (Oct. 19, 2023 Order.)

2

Plaintiff moved for default judgment on November 17, 2023. ("Default Judgment Motion," Dkt. 15.) The Court identified deficiencies with the Default Judgment Motion, including Plaintiff's failure to mail the Default Judgment Motion and motion papers to Defendants' last known business and residential addresses, and directed Plaintiff to correct them. (July 3, 2024 Order.)

On July 10, 2024, Plaintiff mailed the Default Judgment Motion and motion papers to Defendants via first-class mail at 149-44 15th Drive, Whitestone, New York 11357, which was Whitestone's last known business address and Individual Defendants' last known residence. (Cert. of Service, Dkt. 19.) This was also the address indicated as Whitestone's address on (1) the New York Secretary of State's website, (2) Whitestone's Facebook page, and (3) Plaintiff's paychecks and work orders. (Pollack Decl. ¶¶ 24-25.)

That same day, Mr. Forcina—whom Ms. Biscardi previously stated would represent Defendants in this action—contacted Mr. Pollack and told him that "he was possibly going to represent Defendants in the action." (Pollack Decl. ¶ 26.) Mr. Pollack sent copies of the Default Judgment Motion and motion papers to Mr. Forcina via email and inquired whether he would be representing Defendants and accepting service of the papers. (Pollack Decl. ¶ 27; *see also* "Email Correspondence" at 4, Ex. G to Pollack Decl., Dkt. 38-7.) Mr. Forcina responded to Mr. Pollack's email as follows: "Please call me at 347 528 7099. This is the first I have heard of this. I will see if they want to retain me and settle this matter." (Pollack Decl. ¶ 28; *see also* Email Correspondence at 4.) During their telephone conversation, Mr. Forcina told Mr. Pollack that "he represented Defendants in other matters and would see if he would enter an appearance in this action." (Pollack Decl. ¶ 28.)

Based on his conversation with Mr. Forcina, Mr. Pollack requested an extension of time to supplement the Default Judgment Motion to correct the other deficiencies that the Court had

3

identified.  (Pollack Decl. ¶ 29; Dkt. 17.)  The Court granted the request and extended the deadline to July 18, 2024.  (July 11, 2024 Order.)

Between July 12, 2024 and July 17, 2024, Mr. Pollack exchanged emails with Mr. Forcina regarding the Default Judgment Motion.  (*See* Email Correspondence at 2-3.)  On July 16, 2024, Mr. Forcina informed Mr. Pollack that he was "[m]ost likely meeting up tomorrow with [Defendants]." (Email Correspondence at 3.)  Mr. Pollack reminded Mr. Forcina that Plaintiff needed to supplement the Default Judgment Motion by July 18, 2024.  (Email Correspondence at 2.)  Mr. Pollack did not receive any further communication from Mr. Forcina.  (*See* Pollack Decl. ¶ 32.)

Plaintiff supplemented the Default Judgment Motion on July 18, 2024.  (Pollack Decl. ¶ 32; Dkts. 19-20.)  Defendants did not file any response to the Default Judgment Motion.

On August 21, 2024, I recommended that the Default Judgment Motion be granted in part and denied in part.  (Report and Recommendation, Dkt. 21.)  Mr. Pollack emailed a copy of the Report and Recommendation to Mr. Forcina.  (Pollack Decl. ¶ 33; Ex. H to Pollack Decl., Dkt. 38-8.)  No objection to the Report and Recommendation was filed.

Judge Vitaliano adopted the Report and Recommendation, and Default Judgment was entered against Defendants on November 22, 2024.  (Dkt. 23.)  Mr. Pollack emailed a copy of the Default Judgment to Mr. Forcina.  (Pollack Decl. ¶ 33; Ex. I to Pollack Decl., Dkt. 38-9.)

On March 17, 2025, Defendants filed the Motion, seeking vacatur of the Default Judgment pursuant to Rule 60(b).  (Dkt. 25; *see also* Defendants' Memorandum in Support ("Defs. Mem."), Dkt. 26; Plaintiff's Memorandum in Opposition ("Pl. Opp."), Dkt. 40; Defendants' Reply Memorandum ("Defs. Reply"), Dkt. 43.)

In support of the Motion, Ms. Biscardi submitted a declaration under penalty of perjury stating that she "never received notice of this lawsuit in April 2023 as averred by a process server, nor was [she] ever actually served."  (Biscardi Decl. ¶ 4, Dkt. 27.)  In addition, Ms. Biscardi stated

that she handles the mail, and she "was undergoing chemotherapy and radiation after being diagnosed with cancer in December 2018 and having a surgery performed on [her] in March 2022, whereupon [she] was frequently absent from [her] home for doctor's appointments." (Biscardi Decl. ¶ 5.)  Ms. Biscardi claims that she became aware of this action in "late February 2025," when she learned that the personal bank account of Mr. Tegerides, her husband, had been frozen.[1] (Biscardi Decl. ¶ 9.)

## II.    Legal Standard

Under Rule 60 of the Federal Rules of Civil Procedure, the court may relieve a party from a final judgment, order, or proceeding for any of the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

"Under Rule 60(b), a court may vacate a default judgment for any of the six enumerated bases." *Tuqui Tuqui Dominicana, S.R.L. v. Castillo*, No. 19-CV-108 (NRB), 2020 WL 1689763, at *2 (S.D.N.Y. Apr. 7, 2020).  In general, a "motion to vacate a default judgment is addressed to the sound discretion of the district court." *New York v. Green,* 420 F.3d 99, 104 (2d Cir. 2005) (cleaned up). For Rule 60(b)(4) motions to vacate a default judgment for voidness, however, "the choice to grant relief is not left to the district court's discretion – either the judgment is void or it is not." *Vega v.*

---

[1] Ms. Biscardi states that "our personal bank account had been frozen" (Biscardi Decl. ¶ 9), but the bank account that had been frozen appears to be owned by Mr. Tegerides only.  (*See* Plaintiff's Letter dated May 9, 2025, Dkt. 42 ("Plaintiff has only restrained funds in Defendant Tegeride[s]'s account, of which Ms. Biscardi is not a joint holder.").)

*Trinity Realty Corp.*, No. 14-CV-7417 (RJS), 2021 WL 738693, at *6 (S.D.N.Y. Feb. 24, 2021) (citation omitted). Thus, "if a judgment entered against the moving party is void, the Court has no discretion and the 60(b)(4) motion must be granted." *Loc. 78, Asbestos, Lead & Hazardous Waste Laborers, AFL-CIO v. Termon Const., Inc.*, No. 01-CV-5589 (JGK), 2003 WL 22052872, at *3 (S.D.N.Y. Sept. 2, 2003). If a defendant is not properly served with the summons and complaint, the court lacks personal jurisdiction, and any default judgment entered against the defendant is void and warrants vacatur. *See, e.g., id.*; *Cont'l Indem. Co. v. Bulson Mgmt., LLC*, No. 20-CV-3479 (JMF), 2022 WL 1747780, at *2 (S.D.N.Y. May 31, 2022).

For motions to vacate default judgments outside the context of Rule 60(b)(4), the Second Circuit has established a three-factor test that guides district courts' decision: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the party for whom default was awarded; and (3) whether the moving party has presented a meritorious defense." *Singh v. Meadow Hill Mobile Inc.*, No. 20-CV-3853 (CS), 2023 WL 3996867, at *2 (S.D.N.Y. June 14, 2023) (cleaned up) (quoting *Peterson v. Syracuse Police Dep't*, 467 F. App'x 31, 33 (2d Cir. 2012) (summary order)).

## III.    Discussion

### A.    *Whether the Default Judgment Is Void for Lack of Personal Jurisdiction*

Defendants argue that the Default Judgment is void and should be vacated pursuant to Rule 60(b)(4) because "Defendants were never properly served in this case as all service of process was effectuated by nail and mail or first-class mail . . . ." (Defs. Mem. at 4.)

Under Rule 4 of the Federal Rules of Civil Procedure, service may be effectuated, *inter alia*, "by following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1).

"Under New York law, a corporation may be served by personal delivery of the summons to the New York Secretary of State's office." *Templos v. Luna Cuisine, Inc.*, 738 F. Supp. 3d 325, 330 (E.D.N.Y. 2024) (citing N.Y. Bus. Corp. Law § 306(b)(1)). Defendants do not argue that service of the Summons and Complaint on Whitestone via the New York Secretary of State was improper.

New York law permits service on an individual by: (1) personal service; (2) delivering the summons to a person of suitable age and discretion at the individual's actual place of business, dwelling place, or usual place of abode, and mailing it; (3) serving the individual's agent; or (4) affixing the summons to the individual's actual place of business, dwelling place, or usual place of abode, and mailing it. N.Y. C.P.L.R. § 308(1)-(4).

Service pursuant to N.Y. C.P.L.R. § 308(4)—also known as "nail-and-mail" service—is permitted only when service under N.Y. C.P.L.R. § 308(1) or (2) "cannot be made with due diligence." "New York courts have not adopted a *per se* rule as to what constitutes 'due diligence' under Section 308. Rather, whether attempts to effectuate service constitute due diligence is determined on a case-by-case basis." *See Allstate Ins. Co. v. Rozenberg*, 771 F. Supp. 2d 254, 261 (E.D.N.Y. 2011).

Courts within the Second Circuit have found that making "more than two attempts, including some that are during non-business hours, constitutes due diligence." *S.E.C. v. Reynolds*, 112 F.3d 505, 505 (2d Cir. 1996) (cleaned up); *see, e.g.*, *Gomez Cruz v. Ding Feng Lin Constr. LLC*, No. 24-CV-2657 (MKB)(VMS), 2025 WL 2933201, at *6 (E.D.N.Y. Aug. 15, 2025) (finding due diligence where process server attempted service on three consecutive days at different times), *R&R adopted*, 2025 WL 2602265 (E.D.N.Y. Sept. 9, 2025); *Absolute Nevada, LLC v. Grand Majestic Riverboat Co. LLC*, No. 19-CV-11479 (PKC), 2020 WL 7480621, at *3 (S.D.N.Y. Dec. 18, 2020) (explaining that three failed attempts at service at defendant's home over two days constituted due diligence).

A "process server's affidavit of service establishes a prima facie case of the account of the method of service, and thus, in the absence of contrary facts, [courts] presume that [the defendant] was properly served with the complaint." *Old Republic Ins. Co. V. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002). A defendant's sworn declaration that refutes "specific facts" established by the process server's affidavit of service and raises "a factual dispute regarding the propriety of service" rebuts the presumption of proper service and necessitates an evidentiary hearing. *Id.* at 58. Courts have found general denials of receipt of service to be insufficient to overcome the presumption of proper service. *See, e.g.*, *High Farms, LLC v. King*, No. 16-CV-736 (NGG)(PK), 2019 WL 1208785, at *3 (E.D.N.Y. Mar. 14, 2019) (finding defendant's sworn statement that "she was never served" and "there was nothing posted to her door" to be insufficient to rebut presumption of proper service because, *inter alia*, she did not dispute that process server attempted personal service at four separate dates or that she was not home at those times (cleaned up)); *Pohlman v. Vill. of Freeport*, No. 19-CV-05277 (DLI)(RLM), 2020 WL 5878257, at *4 (E.D.N.Y. Sept. 30, 2020) (finding that defendants' sworn statements that "they have not received a copy of the Summons or Complaint in this Action by mail" failed to rebut presumption of proper service because "[s]uch conclusory declarations do not establish that mailing was not made properly to their actual place of business").

Here, the Affidavits of Service as to Individual Defendants set forth in detail the attempts the process server made to serve them at their last known residential address on three different days and at varying times, including during non-business hours when they reasonably could be expected to be at home. (Affs. of Service, Dkts. 6, 7; *see also* Pollack Decl. ¶ 11.) These attempts were sufficient to satisfy the due diligence requirement under N.Y. C.P.L.R. § 308(4). *See Reynolds*, 112 F.3d at 505; *Gomez Cruz*, 2025 WL 2933201, at *6; *Absolute Nevada*, 2020 WL 7480621, at *3. Thus,

the Affidavits of Service constitute prima facie evidence that service as to Individual Defendants was proper under N.Y. C.P.L.R. § 308(4).  *See Old Republic*, 301 F.3d at 57.

Ms. Biscardi asserts that she "never received notice of this lawsuit in April 2023 as averred by a process server," and that she was "[n]ever actually served." (Biscardi Decl. ¶ 4.)  She also asserts that she "handle[s] the mail," and had she received notice of this action, she "would have taken it seriously and immediately hired an attorney." (Biscardi Decl. ¶ 8.)  However, these assertions fail to refute the facts in the Affidavits of Service describing the actions taken by the process server and do not raise any factual dispute regarding the propriety of service on Individual Defendants.  *See Old Republic*, 301 F.3d at 58; *High Farms*, 2019 WL 1208785, at *3; *Pohlman*, 2020 WL 5878257, at *4.

Thus, Defendants have failed to rebut the presumption of proper service established by the Affidavits of Service, and an evidentiary hearing is unnecessary.  *See, e.g.*, *Wardak v. Cavanaugh*, No. 21-MC-47 (BKS)(TWD), 2022 WL 16854349, at *5 (N.D.N.Y. Nov. 10, 2022) (finding that respondent rebutted presumption of proper service so as to necessitate evidentiary hearing where he submitted declaration stating that he (1) had video showing process server never knocked on door, (2) received nothing in mail, and (3) found no document taped to his door).

Accordingly, I find that the Default Judgment is not void for lack of personal jurisdiction and, therefore, does not warrant vacatur under Rule 60(b)(4).

**B.      *Whether the Default Judgment Should Be Vacated on Other Grounds***

Defendants argue that they "otherwise meet the criteria for vacatur of [the Default Judgment]" in that (1) their default was not willful, (2) they have a meritorious defense, and (3) Plaintiff will suffer no prejudice.  (Defs. Mem. at 10.)  Defendants do not invoke a specific subsection of Rule 60(b), but because Defendants' argument is premised on purported lack of notice, I construe their argument to be based on Rule 60(b)(1), which includes mistake, inadvertence, surprise, or excusable neglect.  *See DCH Auto Grp. (USA), Inc. v. Fit You Best Auto., Inc.*, No. 05-CV-

9

2973 (NG)(JMA), 2007 WL 2693848, at *4 (E.D.N.Y. Sept. 12, 2007) (analyzing defendant's motion to vacate default judgment for lack of notice of litigation under Rule 60(b)(1)).

### 1. **Willfulness**

Of the three factors that courts consider in deciding a motion to vacate a default judgment outside the context of Rule 60(b)(4), "willfulness carries the most weight." *In re Orion HealthCorp, Inc.*, 95 F.4th 98, 104 (2d Cir. 2024). "Moreover, a district court has discretion to deny a motion to vacate if it is persuaded that the default was willful and is unpersuaded that the defaulting party has a meritorious defense." *Id.* (cleaned up). "In such cases, any absence of prejudice to the non-defaulting party is not dispositive." *Id.*

For a finding of willfulness, "it is sufficient to conclude that the defendant defaulted deliberately." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) (cleaned up). "Courts have held a default to be willful when a defendant knew about the complaint and failed to respond." *Li v. Fleet New York Metro. Reg'l Ctr. LLC*, No. 21-CV-5185 (PKC)(RER), 2022 WL 1666963, at *6 (E.D.N.Y. May 25, 2022) (cleaned up). A finding of bad faith is not necessary. *See Gucci Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 631, 635 (2d Cir. 1998).

Where defendants attempt to explain their default by claiming they were not properly served and did not have notice of the action, their default will be considered willful unless they can support that contention with more than a conclusory denial. *See Manzanares v. Your Favorite Auto Repair & Diagnostic Ctr., Inc.*, No. 17-CV-5001 (MKB)(RML), 2020 WL 7249249, at *2 (E.D.N.Y. July 2, 2020), *R&R adopted*, 2020 WL 6390162 (E.D.N.Y. Nov. 2, 2020). In addition, courts have found defendants' default to be willful where they fail to offer a satisfactory explanation as to why they did not receive any notice of the lawsuit. *See, e.g., Lopez v. Mohammed*, No. 14-CV-4443 (PKC)(MDG), 2017 WL

10

4277154, at *9 (E.D.N.Y. Sept. 26, 2017); *World Magic Int'l AVV v. Eddy Int'l Ltd.*, No. 09-CV-1447 (DC), 2010 WL 4457184, at *1 (S.D.N.Y. Nov. 1, 2010).

Defendants assert that their default was not willful because they "were never properly served in this case as all service of process was effectuated by nail and mail or first-class mail, and the Defendants never received actual notice of this lawsuit." (Defs. Mem. at 4.)  I find this assertion to lack credibility.

Defendants do not deny that Ms. Biscardi called Mr. Pollack on September 7, 2023, or that Ms. Biscardi told Mr. Pollack during that conversation that "she was going to be speaking with her attorney about the matter, Elio Forcina, Esq." (Pollack Decl. ¶ 15.)  Although Defendants contend that "it was not made clear to Biscardi that a lawsuit had been filed during that conversation, as they merely argued over the merits of Plaintiff's claim" (Defs. Reply at 2 n.1), the fact that she planned to talk to her attorney evinces her awareness of this litigation.  Ms. Biscardi does not explain what she was going to speak to her attorney about, if not this litigation.  She also does not explain how she obtained Mr. Pollack's telephone number to contact him, if not through the Summons and Complaint which contained that information.  (*See* Compl. at 11; Summonses, Dkt. 4.)  The reasonable inference, therefore, is that she obtained Mr. Pollack's contact information from copies of the Summons and Complaint, and that she was aware of this litigation.

No information was provided regarding Mr. Tegerides's purported lack of notice of this action, aside from Ms. Biscardi's assertions.

Moreover, Mr. Forcina contacted Mr. Pollack and told him that he "will see if [Defendants] want to retain [him] and settle this matter," and he will "[m]ost likely [be] meeting . . . with [Defendants]." (*See* Email Correspondence at 3-4.)  Defendants do not deny knowledge of Mr. Forcina or claim that he did not contact or meet with them to discuss this matter.

Therefore, I find that Defendants knew about this lawsuit and failed to respond to the Complaint. Accordingly, their default was willful.

### 2. Meritorious Defense

A finding of willfulness does not end the analysis. I also address the meritoriousness of Defendants' anticipated defense. *See In re Orion*, 95 F.4th at 104 n.4 (2d Cir. 2024) ("Although our Court has previously said that a default should not be set aside when it is found to be willful, we do not read that statement to mean that the Rule 60(b) analysis must end once a court has made that finding." (cleaned up)).

A defense is considered meritorious if "the evidence submitted, if proven at trial, would constitute a complete defense." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993). Defendants "need not conclusively establish the validity of the defense(s) asserted," but they "must still point to some evidence to meet the low threshold necessary to satisfy this factor." *Rodriguez v. Quality Auto. Servs., Inc.*, No. 21-CV-410 (HG)(LKE), 2025 WL 1640497, at *7 (E.D.N.Y. Jan. 9, 2025) (internal citations and quotation marks omitted). To do so, "a defendant must do more than offer 'conclusory assertions' in an affidavit . . . .'" *Id.* at *5 (quoting *Bricklayers*, 779 F.3d at 187).

Defendants argue that they have a meritorious defense because they can establish that Plaintiff was an independent contractor. (Defs. Mem. at 12.)

"An independent contractor is outside the reach of the FLSA and NYLL." *Guthrie v. Rainbow Fencing Inc.*, 349 F.R.D. 55, 70 (E.D.N.Y. 2025) (cleaned up); *see also Vicente v. Ljubica Contractors LLC*, No. 18-CV-419 (VSB), 2025 WL 100897, at *5 (S.D.N.Y. Jan. 14, 2025) ("The strictures of both the FLSA and NYLL apply only to employees, not to independent contractors." (cleaned up)).

The Second Circuit employs an "economic reality test" to assess whether an individual is an employee or an independent contractor for FLSA purposes. *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058 (2d Cir. 1988). The factors to be considered include: "(1) the degree of control exercised

by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business." *Id.* at 1058-59. "No one of these factors is dispositive; rather, the test is based on a totality of the circumstances." *Id.* at 1059. Courts construe the NYLL definition of "employee" to be the same in substance as the definition in the FLSA. *See Vicente*, 2025 WL 100897, at \*5.

In support of their contention that Plaintiff was an independent contractor, Defendants rely solely on Ms. Biscardi's Declaration (s*ee* Defs. Mem. at 12), in which she stated that Defendants paid Plaintiff "as a 1099," that Plaintiff "had his own van and his own tools," and that Plaintiff "was not always available for jobs" and Defendants used him when "he confirmed that he can do a job that [Defendants] had available to him." (Biscardi Decl. ¶¶ 12-13.) Defendants fail to address many of the *Brock* factors that courts must consider in determining whether an individual is an employee or an independent contractor. *See Guthrie*, 349 F.R.D. at 70-71. They also do not submit any evidence to support Ms. Biscardi's assertions, such as a copy of an IRS Form 1099 for Plaintiff, any records of times that Plaintiff worked, or description of the work Plaintiff did and under what circumstances. They also do not dispute that he worked for a time period spanning more than four years. Thus, I find that Defendants do not meet even the "low threshold of adequacy" to support an independent contractor defense. *See Guthrie*, 349 F.R.D. at 70 (quoting *Gov't Emps. Ins. Co. v. Jacobson*, No. 15-CV-7236 (ERK)(RML), 2019 WL 10959842, at \*4 (E.D.N.Y. Oct. 15, 2019)) (finding that defendant failed to establish meritorious defense because, *inter alia*, defendant's declaration provided no supporting evidence for his assertion that plaintiff worked as independent contractor); *Rodriguez*, 2025 WL 1640497, at \*7 (finding defendant's declaration to be "unsupported, conclusory," and insufficient to establish meritorious defense where it stated that defendant "was free to engage

in full-time, part-time, and contract-based employment for other persons and entities, particularly transportation and delivery companies"); *see also Poplawski v. Metroplex on the Atlantics, LLC*, No. 11-CV-3765 (JBW)(RER), 2013 WL 12438839, at *5 (E.D.N.Y. Apr. 3, 2013) (finding meritorious defense where defendant submitted IRS Forms 1099 because "Forms 1099 and [defendant]'s assertion are some evidence that could allow a trier of fact to find that he was not the Plaintiffs' employer which would serve as a complete defense to liability"), *R&R adopted*, 2013 WL 12438843 (E.D.N.Y. Apr. 26, 2013).

Accordingly, I find that Defendants have not established the existence of a meritorious defense.

### 3. **Prejudice to Plaintiff**

"To establish prejudice under the third factor, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Guthrie*, 349 F.R.D. at 71. Courts have also found prejudice where plaintiffs have expended considerable time and resources in the litigation such that it would be unjust to require them to start anew. *See Manzanares*, 2020 WL 7249249, at *6 (finding prejudice because, *inter alia*, "it would be unjust to make plaintiffs start over again after their many efforts and attorney time expended on this case"); *Rodriguez*, 2025 WL 1640497, at *5 (finding prejudice because, *inter alia*, plaintiff "has expended time and money bringing this action").

Defendants were on notice of this action as early as September 7, 2023, when Ms. Biscardi called Mr. Pollack before Plaintiff filed the Default Judgment Motion. (Pollack Decl. ¶ 14, Dkt. 38.) Nevertheless, Defendants did not appear in this action until March 2025. During that time, Plaintiff states that he "has expended significant resources in attempting to secure the Judgment and then attempting to collect upon same, which it has done by freezing Tegerides' bank account." (Pl. Opp. at 13.)

Moreover, in a FLSA action such as this one, a "plaintiff's ability to prove liability will likely turn on his recollection—and the credibility of that recollection—of the hours he worked during certain weeks." *Lazic v. Dorian Owners, Inc.*, No. 10-CV-1824 (BMC), 2011 WL 319879, at *2 (E.D.N.Y. Jan. 29, 2011). The passage of nearly three years since Plaintiff filed the Complaint may likely cause memories to fade and evidence to become lost. *See id.*; *Guthrie*, 349 F.R.D. at 71 (finding prejudice in FLSA case because "the passage of time makes it likely that evidence will be more difficult to locate now," and "memories are also likely to fade" (cleaned up)).

Thus, I find that it would prejudice Plaintiff to vacate the Default Judgment.

\*     \*     \*

Based on the foregoing, I find that Defendants are not entitled to vacatur of the Default Judgment under Rule 60(b)(1). Accordingly, I respectfully recommend that the Motion be denied.

Any written objections to this Report and Recommendation must be filed within 14 days of service of this report. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation. *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:   Brooklyn, New York
         April 3, 2026

15